[Crim. No. 23.  Fourth Appellate District.—March 28, 1930.]

THE PEOPLE, Respondent, v. JAMES G. GILLISPIE, Appellant.

W. E. Balcom for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Warner I. Praul for Respondent.

BARNARD, J.—The defendant was found guilty by a jury of the crime of child stealing, a felony, and the jury also found that he had suffered two prior convictions for felonies. This is an appeal from the judgment based upon the verdict, and from an order denying a motion for a new trial.

It appears from the record that the defendant, who is about twenty-eight years old, came, about May 2, 1929, to reside with his father and stepmother in the town of Elsinore, California. There were other children in the family, including a fifteen year old daughter of defendant's stepmother, by a former marriage. On May 21, 1929, defendant represented to his stepmother that a party was being given at Wildemar, a few miles away. With the permission of the stepmother, defendant left the home around 7 o'clock in the evening with the girl and her brother, ostensibly to attend this party. So far as the parents knew, they never returned until after the defendant was arrested. The defendant took the girl to the state of Nevada, where he married her under an assumed name. They then went into Utah and later into Oregon, where the defendant was arrested about a month after he left Elsinore. The mother testified that she did not hear from her daughter until some time in June, and that she had not consented to the daughter's going away with defendant, other than to attend this party. The evidence shows that instead of going to a party,

they picked up another girl at Wildemar, and later in the evening returned home, secured their personal belongings without the knowledge of the parents, and departed. The evidence shows they proceeded at once into Nevada, traveling all night the first two nights; and that later they went to see certain relatives of the girl in Salt Lake City. The defendant testified that the trip and marriage had been planned before they started to the supposed party at Wildemar.

■ Appellant's first contention is that the trial court erred in sustaining an objection to a question asked of him on direct examination, "Did she ever talk to you about going away from home?" The argument is made that if the girl accompanied appellant of her own volition, and not as a result of force, fraud or enticement, this would constitute a defense to the charge of child stealing. Even if it be conceded that an answer to the question should have been permitted, the record shows that the appellant was later permitted to go into the matter fully and to narrate at length, the circumstances under which the girl accompanied him. He was permitted to testify that he did not take the girl by force or use any fraud or deceit; that he did not try to persuade the girl to go with him, and that he did not endeavor to prevent her from returning to her mother. He was permitted to testify that he had heard the girl express a desire to leave home because she was not satisfied, and further, that she was the one that desired to go away. ■ In any event, it is immaterial whether the girl accompanied appellant voluntarily or not. (*People* v. *Torres*, 48 Cal. App. 606 [192 Pac. 175] ; *People* v. *Munos*, 84 Cal. App. 6 [257 Pac. 549].) The offense involved in such a charge is the offense against the parent and not that against the child.

Appellant's next objection is to the following portions of certain instructions: " . . . that it is immaterial whether or not the said minor girl consented to such taking and went with the defendant freely and voluntarily and of her own accord, and you must not consider for any purpose of this action whether said girl went voluntarily or otherwise."

"It is, therefore, immaterial whether the children went voluntarily and requested that they be taken away."

The court gave very full and complete instructions to which no objection is made, except that the portions above quoted deprived the appellant of a defense to which he was entitled. There is no merit in this contention. (*People* v. *Torres, supra; People* v. *Munos, supra.*)

Appellant next contends that there was no evidence to show that he maliciously, forcibly or fraudulently took and enticed away the girl, or that he detained and concealed her. The evidence that appellant represented to the girl's mother that he was taking her daughter to a party, with his admission that his real intention was to run away with her, and that when they left it was not their intention to return, and that the trip had been planned in advance, is amply sufficient to show that the taking away was fraudulent. Appellant's admission that the action taken was planned in advance, with the deception used, is sufficient of itself to show the intention to detain and conceal. In addition to the deception practiced in order to get her away from the home, appellant's intentions are fully shown by his surreptitious return to remove their personal effects; by his driving all of the first two nights; by his taking the girl out of the state; by his marrying her under an assumed name; and by later taking her to two other states. All of the other surrounding circumstances furnish ample corroboration. (Pen. Code, sec. 21; *People* v. *Munos, supra.*)

Upon the issue of prior convictions, the prosecution introduced a certified copy of the record of the sentence of one James J. Gillespie, *alias* James Dorsey, to imprisonment in the state prison at San Quentin, by the Superior Court of Imperial County, under date of August 29, 1921, upon the charge of destroying and injuring a jail. There was also introduced a certified copy of the proceedings upon the sentence of one James Gillespie to imprisonment in Folsom penitentiary by the Superior Court of Alameda County, under date of November 20, 1923, for the crime of burglary. This record sets forth that, upon the defendant's being informed of the information charging him with burglary and a prior conviction for destroying and injuring a jail, he entered a plea of guilty to the charge and admitted that he had suffered the prior conviction charged in the information.

It is urged that the evidence is not sufficient to show that this defendant is the same person previously convicted, as described in the two certified copies referred to. While there is a slight difference in the spelling of the name, the principle of *idem sonans* applies. Even the attorney for appellant spells the name Gillespie, throughout his brief filed in this appeal. The defendant, himself, upon the stand, denied any prior convictions. The stepmother of defendant was asked the following question: "Q. What was it that Mr. James Gillespie told you about having been where he could not ride in automobiles?" After an objection was overruled, she replied: "A. Why, he was in Folsom prison, been there for five years. Q. Do you know what for? A. Yes, sir, stealing." She also testified that she knew that he was sentenced in the Superior Court of Alameda County to a term in Folsom prison for burglary; that he had written to them from the prison; that her husband had signed the papers to get him out on parole, and had brought him to their home in order to give him a fresh start. An effort was made to attack the weight of this evidence by showing on cross-examination that the witness was blind, and therefore could not read; that she had never been in court at the time the defendant was convicted, and that she had not actually seen the parole papers. In addition to such weight as the circumstances give to the other portions of her evidence, her answer to the first question, above quoted, shows an admission by the defendant to her that he had served a term in Folsom prison. We think this alone is sufficient. (*People* v. *Hettick*, 126 Cal. 425 [58 Pac. 918].) On cross-examination, she stated she had not talked a great deal to the defendant about the matter, but nothing was brought out to shake her statement that she had some conversation with him on the subject. Appellant's father also testified that he knew his son had served a term in Folsom prison for burglary; also that he had corresponded with appellant while he was at Folsom, and when asked if he knew how appellant's release from Folsom had been obtained, he replied: "Why, I saw his parole officer, I signed for his release."

In reference to the prior conviction in Imperial County, not only does the certified copy of the proceedings in the Superior Court of Alameda County show that the defend-

ant in that case admitted such a prior conviction in Imperial County, but, in addition, defendant's mother testified that she knew appellant had served a term in San Quentin, and that this was on account of a sentence by the Imperial County Court on or about August 29, 1921. On cross-examination, she admitted that she was not personally present in court when he was convicted, but she was not cross-examined on other sources of knowledge, and so far as appears from the record, she may have seen him there. In the absence of anything to throw any doubt upon it, we think that her statement that she knew he had served such a term, together with the admission of the defendant in the Alameda County case, that he had been convicted of such an offense in Imperial County, with the other evidence that the person convicted in the proceedings in question in Alameda County, was the same person as this defendant, is sufficient to sustain the finding as to this prior conviction.

The judgment and order are affirmed.

Marks, Acting P. J., and Beaumont, J., *pro tem.*, concurred.