[Crim. No. 2980. Second Appellate District, Division One.—August 24, 1937.]

THE PEOPLE, Respondent, v. MIKE SBERNO, Appellant.

[Crim. No. 2981. Second Appellate District, Division One.—August 24, 1937.]

THE PEOPLE, Respondent, v. MIKE SBERNO, Appellant.

George A. Glover and Richard A. Haley for Appellant.

U. S. Webb, Attorney-General, and John O. Palstine, Deputy Attorney-General, for Respondent.

THE COURT.—Each of these appeals is from judgments of conviction entered upon the verdict of a jury and from an order denying defendant's motion for a new trial. On the trial of the first case (No. 2980), defendant was found guilty of the crimes of robbery and assault with intent to commit murder, as charged in counts I and II, respectively, of the information. The trial of the second case resulted in verdicts of guilty on each of three counts of robbery. It was also found by each jury that theretofore defendant had been convicted of the crime of "interstate theft" in the District Court of the United States for the Northern District of Illinois.

The evidence in the first case discloses that on the night of May 7, 1936, in the city of Los Angeles, two armed men, one of them assertedly the defendant, entered and robbed a service station which at that time was being operated by two women, one of whom drew a revolver from a drawer and commanded the robbers to drop their weapons, whereupon defendant's companion shot and wounded her.

█ The contentions of appellant, that the court erred (1) in admitting in evidence a written statement purporting to be a transcript of an interview wherein defendant made certain admissions; (2) in declining to dismiss count II of the information; (3) in giving an instruction on the subject of the defense of alibi framed by the prosecution and rejecting an instruction on the same subject offered by the defendant; (4) in instructing the jury that each conspirator was liable for the acts of his co-conspirator done in furtherance of the conspiracy; and (5) in denying the motion for a new trial for each of the foregoing reasons, are without merit. The written statement referred to purported to be a transcript of questions put to the defendant by a Chicago policeman and his answers thereto. A Los Angeles police officer testified that he read the statement to defendant, who admitted that he had made the answers therein contained. With this foundation, the statement properly was admitted in evidence.

█ The fact that defendant did not fire his gun, but was about to drop it when resistance was offered, does not excuse him from responsibility for his confederate's act. The evidence was ample to justify the jury in finding that the assault was in furtherance of a common criminal design. (*People* v. *Kauffman,* 152 Cal. 331 [92 Pac. 861].) Both

the man identified as defendant and his companion were armed. They jointly undertook a robbery and used their weapons to frighten their victims into submission. It is highly improbable that the robbers, before acting upon their plans, agreed between themselves to surrender upon a showing of armed resistance by their proposed victims. "Pistols are not used for the purpose of breaking into a safe; their purpose is to kill those who interfere to prevent a burglary or arrest the perpetrators." (*People* v. *Woods*, 147 Cal. 265 [81 Pac. 652, 109 Am. St. Rep. 151].) ■ Not only did the court properly decline to dismiss count II, but it did not err in its instruction to the effect that each of a group of conspirators is criminally responsible for the acts of his associates committed in furtherance of their common design and "which follow incidentally in the execution of the common design as one of its probable and natural consequences, even though it was not intended as a part of the original plan". (*People* v. *Kauffman*, 152 Cal. 331, 334 [92 Pac. 861, 862].)

■ Appellant asserts that it was prejudicial error for the court to omit the following qualification of the rule just stated (also found in *People* v. *Kauffman*, *supra*) : "Even if the common design is unlawful and if one of the members of the party departs from the original design as agreed upon by all of the members and does an act not contemplated by those who entered into the common purpose, but was not in futherance thereof and not the natural or legitimate consequence of anything connected therewith, the person guilty of such act would alone be responsible therefor". Appellant offered no instructions upon this point. Moreover, since the evidence as to what occurred at the time of the robbery was uncontradicted, and since the defendant contended upon the trial that he was wholly innocent of the charges, the question of whether or not the shooting was in furtherance of a common criminal design could scarcely be considered as seriously in issue. In the circumstances, defendant suffered no discernible prejudice either from that omission or from any of the other asserted errors in the instructions upon this subject. ■ The instruction on the subject of alibi was in substance the same as that offered by defendant, the only material difference being that the court omitted to state that "this defense is as proper and legitimate as any other".

In the second case, No. 2981, defendant was convicted on three counts of robbery. The facts were as follows: On or

about May 7, 1936, according to the testimony of one L. C. Slosson, defendant and a companion entered the service station of which Slosson was the manager and threatened to shoot him if he did not open the safe.  The witness, who did not have the keys to the safe, convinced the robbers that he could not open it, and thereupon they took what money the witness had in his pockets and departed.  The conviction on the second and third counts was based on testimony to the effect that about March 7, 1936, defendant and a companion entered a combination grocery and postoffice substation, and at the point of a gun compelled the clerk of the store to give them the money that was in the safe, and compelled the proprietress, who also was the postmistress, to hand over the money that was in a drawer in the postoffice.  Defendant offered testimony that he was elsewhere at the time the robberies were committed, and in rebuttal the prosecution offered the testimony of the two witnesses who had identified defendant as a participant in the service station robbery involved in the first case hereinbefore discussed.  ▮  Appellant's ''specification of errors'' includes the claim that ''the court erred in refusing to consolidate counts II and III of the amended information''; but no argument or further reference is made thereon or thereto, and from the evidence it appears not to be well founded.

▮  Appellant's first point is that the court erred ''in refusing to allow a reasonable continuance for the purpose of preparing an adequate defense'', upon a showing that one of defendant's attorneys was ill.  Defendant entered his pleas on January 7th, at which time his two present counsel were permitted to withdraw from the case.  On January 14th, Mr. Haley, one of the counsel who had withdrawn, was reappointed to represent defendant.  The application for continuance, supported by affidavit, was presented by Mr. Haley on February 9th, and although it was refused, the case did not actually go to trial until February 18th, because of the pending trial of the first case.  Mr. Haley was the only counsel of record. His affidavit stated that the illness of the other counsel had necessitated Mr. Haley's doing the business of both.  Counsel in their brief assert that defendant was prejudiced by the fact that for lack of time to confer with counsel, the defense witness Pecora omitted to consult his business records, and hence was obliged to testify solely from memory as to whether defendant actually was employed by him on certain crucial

days, to the injury of the witness' credibility. This witness, a resident of Los Angeles, was the only defense witness who did not testify at the first trial. The trial of this case began on February 18th, but selection of the jury was not completed until Feburary 23d. After adjournment on the 19th, the trial was not resumed until the 23d, because of the week-end and an intervening holiday. It thus appears that counsel had ample time to confer with all the witnesses. The showing of prejudice attempted to be made in the briefs of counsel is insufficient, and the record does not disclose that any better showing, or any showing whatever, was made on the motion for a new trial.

It is asserted that the court erred in permitting questions by the deputy district attorney on cross-examination of defense witnesses aimed at eliciting the fact that defendant recently had been tried for other crimes; and further, that the deputy district attorney's efforts in this regard were successful and constituted prejudicial misconduct. It appears that the questions asked were permissible attempts at impeachment; but in any event, by no means had they the effect attributed to them by appellant. The prejudice to appellant, if any, in this respect, furnishes no legal cause for complaint.

The court gave an instruction on the subject of circumstantial evidence, to which objection is now made on the ground that it should not have been given at all and on the further ground that the court should have included therein a statement to the effect that "all of the circumstances must not only be consistent with each other, but inconsistent with every other rational hypothesis except that of guilt". It does not appear that appellant requested such an amendment to the instruction or any instruction on the subject. In this case appellant was convicted upon the evidence of eyewitnesses; not upon circumstantial evidence. Since there was no evidence to which the jury might have applied the instruction, we are unable to see how appellant was prejudiced thereby.

We think that the evidence in each case on the subject of the alleged prior conviction was sufficient to sustain the verdict of the jury thereon. An authenticated copy of the judgment of conviction of one "Mike Sberna" of the crime of "interstate theft" in the District Court of the United States for the Northern District of Illinois was introduced by

the prosecution. In moving to dismiss that portion of the charge, defendant did not contend that the evidence of identity was insufficient, but confined his objection to the point that there was no evidence of his having served a term of imprisonment upon that conviction. In each case the allegation that defendant had served a term of imprisonment for that felony was stricken from the information and no finding was made thereon by the jury.

Although there are two lines of authority, one holding that "identity of the name of the defendant and the person previously convicted is *prima facie* evidence of identity of person, and, in the absence of rebutting testimony, supports a finding of such identity" (85 A. L. R. 1107); and the other to the effect that identity "must be established by affirmative evidence; mere proof of identity of names not being sufficient" (85 A. L. R. 1111); some of the authorities cited in support of the latter statement may readily be reconciled with those which hold that the presumption is sufficient. For instance, the presumption, as an "isolated fact", was held to be insufficient when applied to a very common name, as in *State* v. *Smith,* 129 Iowa, 709 [106 N. W. 187, 6 Ann. Cas. 1023, 4 L. R. A. (N. S.) 539]. In other cases it was held that the presumption of identity was not sufficient to warrant the court in holding that the prior conviction had been established as a matter of law, but that the question must go to the jury. (*State* v. *Bruno,* 69 Utah, 444 [256 Pac. 109]; *State* v. *Lashus,* 79 Me. 504 [11 Atl. 180].) In this state, in the case of *People* v. *Williams,* 125 Cal. App. 387 [13 Pac. (2d) 841], it was said:

" . . . the record discloses the fact that preceding the introduction of testimony by a witness to the effect that defendant had admitted to him all the facts relevant to the charge of prior conviction, the prosecution introduced in evidence certified copies of the record in the Superior Court in and for the County of Yuba, this. state, by which it appeared that theretofore in said court a man by the same name as defendant had pleaded guilty to . . . burglary, . . .

"Although prior to the reception in evidence of the admission of defendant which is the subject of appellant's present objection, defendant had not been identified as the person who theretofore had been convicted of a felony, it is noted that the name of the defendant who was convicted in Yuba county is identical with that of the defendant in this action.

It is a rule of law that identity of person may be presumed from identity of name (subd. 25, sec. 1963, Code Civ. Proc.); also that a presumption constitutes a species of evidence which, unless controverted, is sufficient proof of the existence of the fact to which it relates. (10 Cal. Jur. 746, and authorities there cited.) It is therefore apparent that, in the circumstances presented by the record which preceded the admission in evidence of testimony in substance that defendant had admitted his prior conviction, at least a *prima facie* case had been established against him with reference to his former conviction of a felony. In the case of *People* v. *Hettick*, 126 Cal. 425 [58 Pac. 918, 919], where a similar question was presented for the consideration of the appellate tribunal, it was said:

" 'In support of the charge of previous conviction of grand larceny the prosecution placed in evidence records of the superior court of San Diego county showing the conviction and sentence to one year in the state prison at San Quentin of "George Hettick" for the crime of grand larceny in having stolen a mare, the personal property of J. C. Pelton. The testimony of Charles Bell, a witness for the prosecution, was to the effect that the defendant had admitted to him that he was sent to state prison at San Quentin for stealing a horse from John C. Pelton.

" 'There was nothing to contradict or discredit the foregoing evidence, and we deem it sufficient to support the verdict for the people on the charge of a prior conviction of larceny.'

"In addition to the facts hereinbefore set forth, the record herein discloses the fact that on cross-examination defendant testified that theretofore, in the county of Yuba, he had been convicted of the crime of 'larceny'. It follows that, with reference to the point under consideration, defendant has no just ground for complaint."

In *People* v. *Foster*, 3 Cal. App. (2d) 35 [39 Pac. (2d) 271], where the appellate court held that the certificate of the warden of the Louisiana state prison was not properly authenticated and therefore not competent evidence, with the result that the only evidence in this case on the subject of prior conviction was an exemplified copy of the judgment of conviction of a person of the same name as defendant, it was held that there was "no competent evidence that this appellant actually served time in the Louisiana state prison for the prior con-

viction of robbery, or that he is the same person who was sentenced to imprisonment in that institution''.

In *People* v. *Willison*, 116 Cal. App. 157, 159 [2 Pac. (2d) 543], it was held that the record of conviction of one James Mallek, together with identification of defendant as a former prisoner known as ''Tony Mallach'' was insufficient; as also was the record of one Edward Powers together with the identification of defendant as a former prisoner under the name of ''John or George Powers''.

In *People* v. *Gillispie*, 104 Cal. App. 765 [286 Pac. 502, 503], it appeared that the prosecution had introduced a certified copy of the proceedings upon the sentence of one Gillespie to imprisonment in Folsom for the crime of burglary. Although the court said that ''the principle of *idem sonans* applies'' to the slight difference in the spelling of the name, it did not directly hold that the court record standing alone, would have been sufficient evidence notwithstanding the difference in the names, but concluded that the record, together with testimony of admissions by defendant that he had served a term in Folsom prison, constituted sufficient evidence.

In many of the cases wherein the presumption of identity from identity of names was said to be sufficient, reference is made to attendant facts and circumstances which strengthened that presumption. In *Hefferman* v. *United States*, 50 Fed. (2d) 554, it was said:

''The government introduced the record of two prior convictions in the same court of a man of the same very unusual name, for the same offenses of selling liquor and maintaining a nuisance at the same address . . . in the same city, and in the same judicial district. There was no other identification of the . . . defendant; yet this, we hold, was *prima facie* identification . . . As the defendant introduced no evidence to the contrary, the *prima facie* evidence of identity stood undisturbed.''

And in *State* v. *Bizer*, 113 Kan. 731 [216 Pac. 303], it was said: ''The presumption of the identity of parties arising from the identity of names may be strong or weak, depending upon many circumstances. If the name is a common one, the presumption is not so strong as if the name is unusual. The relation of time, place and circumstances has much bearing upon the force to be given to the presumption.''

Considering the fact that the names ''Sberna'' and ''Sberno'' might well be said to fall within the designation

of *"idem sonans"* (*People* v. *Gillispie,* 104 Cal. App. 765 [286 Pac. 502]); that the given name is the same in each instance, and that the surname is an uncommon one; and therefore applying the presumption of identity of person;—and in view of the further evidence which appears from the whole record in each case, that defendant was a resident of Chicago, within the judicial district in which the prior conviction was had; that the earlier crime was similar to those of which he was accused herein; together with the proof of his admission in the one case that he had "done time"; and his failure, although in each case he testified in his own behalf, to deny such prior conviction;—considering these circumstances, we are of the opinion that defendant may not justly complain of the prosecution's failure to produce further evidence of the identity of Sberna and Sberno. In this connection, it should be noted that in each case, upon cross-examination of defendant, he was asked the usual question for the purpose of impeachment, "You have heretofore been convicted of a felony?" to which he answered that he had, "once".

The judgments in each case are affirmed; also, the orders in each case by which defendant's motions for new trial were denied are affirmed.